UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JADRANKA BEGONJA,

                          Plaintiff,

-v-

VORNADO REALTY TRUST, BROADWAY 280
PARK FEE LLC, BUILDING MAINTENANCE
SERVICE LLC, and KRESHNIK RAMA,

                          Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/29/16

15 Civ. 4665 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

In this employment discrimination action, Jadranka Begonja brings claims against Vornado Realty Trust ("Vornado"), Broadway 280 Park Fee LLC ("280 Park"), Building Maintenance Service LLC ("BMS") (collectively, the "Corporate Defendants"), and Kreshnik Rama. Begonja alleges that she was subjected to discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101 *et seq.*

Defendants now move to dismiss the complaint pursuant to a mandatory arbitration clause in a collective bargaining agreement; defendants also seek to recover attorneys' fees. For the following reasons, the Court stays this action, refers all claims brought in the Complaint to arbitration, and denies the request for fees.

I.    Background[1]

    A.    The Parties

Vornado is a foreign business corporation organized under Maryland law with its principal place of business in New York, New York.  Compl. ¶¶ 4, 6.  280 Park, in which Vornado has an ownership interest, is a foreign limited liability company organized under Delaware law that owns an office building at 280 Park Avenue, New York, New York.[2]  *Id.* ¶¶ 12–14, 17.  BMS is a foreign limited liability company organized under Delaware law with its principal place of business in New York, New York.  *Id.* ¶¶ 8, 10.  280 Park and BMS are affiliates of Vornado.  Dkt. 21 ("Goldberg Aff."), ¶ 4.  At relevant times, Rama was an employee

---

[1] These facts are primarily drawn from the Complaint, Dkt. 1 ("Compl."), and from the collective bargaining agreement binding the parties, Dkt. 27, Ex. A ("CBA").  Although the CBA was not attached to the Complaint nor referenced therein, the Court considers the CBA (and, when necessary, other materials of undisputed authenticity and accuracy that were attached to the parties' submissions) for purposes of this motion to dismiss.  That is because this motion is effectively a motion to compel arbitration:  The Second Circuit has recognized that, depending on the facts and arguments presented, a motion to dismiss based on an arbitration clause may be treated as a motion to compel arbitration, *see Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 139–140 (2d Cir. 2008), and district courts in this Circuit have so construed such motions, *see Cupples v. Valic Fin. Advisors, Inc.*, No. 13 Civ. 4501 (JS), 2014 WL 4662272, at *3 (E.D.N.Y. Sept. 18, 2014); *Jillian Mech. Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 363 (E.D.N.Y. 2012).  "In the context of motions to compel arbitration brought under the Federal Arbitration Act ("FAA") . . . the court applies a standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003), and courts therefore consider materials outside the Complaint, *see, e.g.*, *HBC Solutions, Inc. v. Harris Corp.*, No. 13 Civ. 6327 (JMF), 2014 WL 6982921, at *1 (S.D.N.Y. Dec. 10, 2014).

[2] The Complaint states that 280 Park "is an office building located at 280 Park Avenue, New York, NY 10017," Compl. ¶ 12, and also is a limited liability company with an identification number issued by the New York Department of State, *id.* ¶ 13.  The Court construes the Complaint as making claims against 280 Park in its capacity as a company, not as a physical structure.  *Accord* Goldberg Aff. ¶ 4 (stating that defendant 280 Park *owns* the commercial building located at 280 Park Avenue, New York, NY 10017).

of 280 Park,[3] *id.* ¶ 4, with supervisory and decision-making authority, including the power to hire and fire employees such as Begonja, Compl. ¶ 22.

Begonja, age 58, is of Croatian origin. *Id.* ¶ 2. She was employed as an office cleaner by 280 Park in New York City, Goldberg Aff. ¶ 4, beginning on or about June 2, 2011 and until her indefinite suspension on or about September 24, 2014, Compl. ¶¶ 31–32. Begonja is or was a member of the Service Employees International Union, Local 32BJ (the "Union"). Goldberg Aff. ¶ 6 ("is"); Dkt. 28 ("Pl. Br."), at 3 ("was").

### B. The Collective Bargaining Agreement

At all times during Begonja's employment, she and the Corporate Defendants were bound by a collective bargaining agreement known as the Commercial Building Agreement (the "CBA"), formed between the Union and the Realty Advisory Board on Labor Relations ("RAB"), a multiemployer association of which defendants are members. Goldberg Aff. ¶ 6; Dkt. 22 ("Def. Br."), at 2; Pl. Br. 3.[4]

In pertinent part, the CBA provides:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, sexual

---

[3] Begonja alleges that Rama was "effectively employed" by all three Corporate Defendants, Compl. ¶ 23, while defendants represent that Rama was employed by 280 Park, an affiliate of Vornado and BMS, Goldberg Aff. ¶ 4. The Court has no occasion to resolve whether Vornado and BMS were joint employers of Begonja, as this question, while relevant to the merits, is immaterial to the resolution of the instant motion.

[4] The parties' submissions are inconsistent as to whether the CBA binds all defendants, *see* Def. Br. 2; Pl. Br. 3, or just the Corporate Defendants, *see* Goldberg Aff. ¶ 6. The CBA does not appear to speak to whether supervisors like Rama are subject to the arbitration clause. However, federal arbitration policy requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 248 (2d Cir. 1991); *see also Pick Quick Food, Inc. v. United Food & Commercial Workers Local 342*, 952 F. Supp. 2d 494, 505 (E.D.N.Y. 2013). And the CBA provides that an arbitrator "shall have the power to decide all differences arising between the parties as to interpretation, application or performance of any part of this Agreement." CBA Art.

3

> orientation, or any characteristic protected by law, including, but not limited to, claims made pursuant to [Title VII], . . . [the NYSHRL], [the NYCHRL], . . . or any other similar laws, rules or regulations.

CBA Art. XXI § 24(A). As to the resolution of discrimination claims, the CBA states:

> All [discrimination] claims shall be subject to the grievance and arbitration procedure [set forth in Articles VII and VIII of the CBA] as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

*Id.* The CBA provides for a grievance procedure "[t]o try to decide without arbitration any issues between the parties which under this agreement they must submit to the Arbitrator." *Id.* Art. VII § 2. The CBA contemplates that employees will often be represented by the Union. *See id.* Art. VII § 3. Where a grievance is not settled, the CBA provides for arbitration:

> A Contract Arbitrator shall have the power to decide all differences arising between the parties as to interpretation, application or performance of any part of this Agreement, and such other issues as are expressly required to be arbitrated before him/her . . . .
>
> In the event that the Union appears at an arbitration without the grievant, the Arbitrator shall conduct the hearing, provided it is not adjourned. . . .
>
> The procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues, and the Arbitrator shall have the power to award appropriate remedies, the award being final and binding upon the parties and the employee(s) or Employer(s) involved. Nothing herein shall be construed to forbid either party from resorting to court for relief from, or to enforce rights under, any award.

*Id.* Art. VIII §§ 1–3.

The Union and the RAB dispute whether, under the CBA, an individual employee who has sought but been denied Union support for her claim is required to arbitrate rather than pursue her claims in court. *See id.* Art. XXI § 24(B)(1). The CBA leaves that question—which it

---

VIII § 1. Therefore, whether the CBA covers disputes between Begonja and Rama should be addressed, in the first instance, in arbitration.

4

describes as the "reserved question"—for arbitration, providing that either the Union or RAB may initiate arbitration to resolve it. *Id.* The CBA also sets forth procedures for arbitration of claims which employees bring without Union representation. *See id.* § 24(B)(3).

### C. Factual Background

During her employment with 280 Park, Begonja was the sole Croatian employee. Compl. ¶ 33. She alleges that she was subject to adverse treatment by supervisors, *see generally id.* ¶¶ 35–61, including by ethnic Albanian supervisors such as Rama, *id.* ¶ 39. She asserts that non-Croatian employees were not subjected to similar treatment, *id.* ¶ 68, and that at times she was denied opportunities given to ethnic Albanian coworkers, *id.* ¶¶ 48, 55.

Begonja claims that she filed grievances regarding incidents of alleged mistreatment, *id.* ¶¶ 53, 55, 62, and that, on or about July 22, 2013, she filed an Equal Employment Opportunity Commission ("EEOC") discrimination charge against Vornado and BMS, *id.* ¶ 24. On or about September 24, 2014, she was indefinitely suspended for the alleged theft of a Windex bottle—an accusation Begonja denies and claims was a pretextual cover for discrimination against her based on her national origin, and an act of retaliation in response to her earlier EEOC filing. *Id.* ¶¶ 64–67. Both Begonja and defendants treat the indefinite suspension as, effectively, a termination of her employment. *See id.* ¶ 66; Def. Br. 1–2.

On November 11, 2014, Begonja again filed an EEOC discrimination charge against Vornado and BMS, along with a separate charge against 280 Park. Compl. ¶ 24. She claimed discrimination on the basis of her national origin, and retaliation in response to her complaints

about such discrimination. *Id.* On March 19, 2015, the EEOC mailed Begonja right-to-sue letters corresponding to each of the three EEOC filings.[5] Compl., Ex. 1.

Concurrently, Begonja has been engaged in an arbitration process to resolve a claim that her termination violated the "just cause" provision of the CBA, although she has not also asserted a discrimination claim in that forum. Goldberg Aff. ¶ 7; *see also id.*, Ex. C.

### D. Procedural History

On June 16, 2015, Begonja filed the Complaint. Dkt. 1. Begonja brings the following causes of action: (1) discrimination based on her national origin, in violation of Title VII (as against the Corporate Defendants) and the NYSHRL and the NYCHRL (as against all defendants), Compl. ¶¶ 71–88; and (2) retaliation in response to her complaints and EEOC filings, in violation of Title VII (as against the Corporate Defendants) and the NYSHRL and the NYCHRL (as against all defendants), *id.* ¶¶ 89–105. Begonja seeks compensatory damages as well as punitive damages, costs, and attorneys' fees. Begonja's Complaint is silent as to whether she at any point has sought or been denied Union support for her claim.

In a letter dated June 17, 2015, defendants asked Begonja to withdraw this lawsuit, on the ground that she was required under the CBA to pursue her claims through arbitration. *See* Goldberg Aff., Ex. D. In an e-mail exchange with Begonja's counsel on August 11, 2015, defendants' counsel offered "to waive any [statute of limitations] defense in the arbitration

---

[5] Begonja attached three EEOC right-to-sue letters to the Complaint; two copy BMS as a recipient, and the remaining letter copies Vornado as the "280 Park Contact." Compl., Ex. 1. Although it is not explicitly clear that the EEOC issued right-to-sue letters as against each of the four defendants, the Court assumes (and defendants do not dispute) that, for the purpose of resolving this motion, Begonja has properly exhausted her EEOC remedies as against each defendant. Notably, in some circumstances, the Second Circuit permits employment discrimination actions to proceed against defendants unnamed in preceding EEOC filings. *See, e.g.*, *Newsome v. IDB Capital Corp.*, No. 13 Civ. 6576 (VEC), 2014 WL 4211351, at *2 (S.D.N.Y. Aug. 26, 2014) (citing *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999)).

proceeding" in exchange for a voluntary dismissal. Dkt. 30, Ex. A. However, Begonja did not file for voluntary dismissal.

On September 4, 2015, defendants moved to dismiss the Complaint and for attorneys' fees, Dkt. 20, and submitted a supporting affirmation, Dkt. 21, and brief, Dkt. 22. As noted, *see supra* note 1, the Court construes the motion to dismiss as a motion to compel arbitration, pursuant to the Federal Arbitration Act ("FAA").

On September 24, 2015, Begonja filed a brief in opposition. Dkt. 28. On October 2, 2015, defendants filed a reply brief with an accompanying affirmation. Dkt. 29 ("Def. Reply Br."); Dkt. 30 ("Goldberg Reply Aff.").

On October 9, 2015, the Court held an initial pretrial conference. At that conference, defendants represented that, should the Court compel arbitration of Begonja's claims, they would waive any defense at arbitration to the effect that Begonja's discrimination claims are time-barred. Defendants also represented that they would attempt to consolidate Begonja's discrimination claims with the pending arbitration proceedings at which her separate claim that her termination violated the CBA's "just cause" provision is being heard.

## II.     Applicable Legal Standards Under the Federal Arbitration Act

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate disputes." *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)) (internal quotation marks omitted). The FAA was enacted to reverse "centuries of judicial hostility to arbitration agreements" and "to

place arbitration agreements upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal quotation marks omitted).

In resolving a claim that an action must be arbitrated pursuant to an arbitration agreement, this Court must determine: (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *See Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008).

On a motion to compel arbitration under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun*, 316 F.3d at 175. "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (internal quotation marks omitted).

The party moving to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). The moving party need not "show initially that the agreement would be *enforceable*, merely that one existed." *Id.* (emphasis in original). Subsequently, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000)).

### III. Discussion

Begonja does not dispute that she is bound by the CBA or that her discrimination claims fall within the scope of the CBA's mandatory arbitration clause. She also does not argue that Congress exempted Title VII claims from the FAA. Instead, Begonja: (1) argues that the CBA's arbitration provisions are unenforceable because they operate as a substantive waiver of her claims and are unconscionable; (2) asks the Court to deny the motion to dismiss because her claims, if directed to arbitration, would be time-barred; (3) asks the Court to stay rather than dismiss her action, in the event that the arbitration clause is held valid and enforceable; and (4) opposes the award of attorneys' fees sought by defendants. The Court addresses these issues in turn.

#### A. Enforceability of the Arbitration Clause

At the outset, defendants argue that *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), which involved a similar collective bargaining agreement, resolves this case and mandates arbitration here. *See* Def. Br. 2–3; Def. Reply Br. 1. The respondents in *Pyett* had argued that their claims under the Age Discrimination in Employment Act ("ADEA") could not be subject to mandatory arbitration, because a union, rather than individual employee members, had waived the right to bring such claims in court. *See* 556 U.S. at 257, 260. Rejecting that argument, the Supreme Court held, in relevant part, that the respondents were bound to arbitrate ADEA claims, because the collective bargaining agreement, negotiated freely between the Union and RAB, so required. *Id.* at 260.

9

The agreement in *Pyett* appears indistinguishable in relevant part from the CBA here.[6] But the holding in *Pyett*, while foreclosing some challenges that Begonja might bring, does not resolve all of her arguments. Among other things, the Supreme Court in *Pyett* declined to reach respondents' separate argument that the agreement at issue there operated as a substantive waiver of their statutory rights because the Union was able to block the arbitration of ADEA claims. The Supreme Court explained that it did not reach that issue because it "was not fully briefed . . . and [was] not fairly encompassed within the question presented." *Id.* at 273. Here, however, Begonja makes such an argument, and it has been fully briefed. This Court therefore must independently assess this and any other challenges Begonja raises that were not rejected on the merits in *Pyett*.

Begonja makes two principal arguments why the arbitration provisions of the CBA are unenforceable: that the CBA's arbitration scheme waives her substantive statutory rights, and that its arbitration provisions are unconscionable as a matter of contract law.

### 1. Substantive Waiver of Statutory Rights

As the Supreme Court reiterated in *Pyett*, "a substantive waiver of federally protected civil rights will not be upheld" in an arbitration agreement. 556 U.S. at 273.[7] A federal court "will compel arbitration of a statutory claim only if it is clear that 'the prospective litigant

---

[6] The Court is unable to conclude, on the submissions before it, whether, as defendants assert, the "Collective Bargaining Agreement for Contractors and Building Owners" at issue in *Pyett*, *see* 556 U.S. at 251, is the "very same" agreement as the "Commercial Building Agreement" (effective January 1, 2012) at issue here. *See* Def. Reply Br. 1.

[7] Whether this principle also applies to a waiver of substantive rights created by state law is as yet unresolved. *See Orman v. Citigroup, Inc.*, No. 11 Civ. 7086 (DAB), 2012 WL 4039850, at *3–4 (S.D.N.Y. Sept. 12, 2012) ("The Court cannot identify any cases in which a vindication of statutory rights analysis under the FAA has been applied to state statutory claims."). That question is not presented here.

effectively may vindicate its statutory cause of action in the arbitral forum,' such that the statute under which its claims are brought 'will continue to serve both its remedial and deterrent function.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) (quoting *Mitsubishi*, 473 U.S. at 637).  Accordingly, if the "terms of an arbitration agreement served to act 'as a prospective waiver of a party's right to pursue statutory remedies . . . , [a court] would have little hesitation in condemning the agreement as against public policy.'" *Ragone*, 595 F.3d at 125 (quoting *Mitsubishi*, 437 U.S. at 637 n.19).  However, the Supreme Court has recently held, for there to be a waiver of statutory rights, the *right* to pursue statutory claims must be blocked. It is not enough that the process of bringing such claims in arbitration would be prohibitively expensive or otherwise impracticable.  *See Am. Express. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310–11 (2013), *rev'g In re Am. Express Merch. Litig.*, 667 F.3d 204 (2d Cir. 2012).

Here, Begonja argues that the CBA works a waiver of her substantive rights under a federal statute because the Union may decline to bring an employee's claims to arbitration itself. *See* Pl. Br. 7.  As noted, the Supreme Court in *Pyett* declined to consider whether a substantive waiver of statutory rights would exist where a union "prevent[s] [members] from 'effectively vindicating' their 'federal statutory rights in the arbitral forum.'"  556 U.S. at 274 (quoting *Green Tree*, 531 U.S. at 90).  That issue is also not presented on the facts here, for two reasons. First, Begonja does not anywhere allege that the Union has in fact declined—or threatened to decline—to support her discrimination claims.  And, second, even if the Union had done so, this outcome would not close off Begonja's right to pursue such a claim on her own.  Indeed, the CBA expressly provides procedures for arbitration by an individual employee in the event that the Union denies representation.  *See* CBA Art. XXI § 24(B)(3).

11

To be sure, the CBA leaves it unresolved whether, where (unlike here) the Union has affirmatively declined to pursue a claim on a particular employee's behalf, the employee is obliged to pursue that claim in arbitration as opposed to in the courts. The CBA recites the Union's position that such an employee need not pursue such a claim in arbitration, as well as RAB's position to the contrary. *See id.* § 24(B)(1). The CBA leaves that forum selection issue for resolution in arbitration. Either way the arbitrator resolved that issue, however, the CBA would leave open a forum (either arbitration or the courts) in which an individual employee may pursue a discrimination claim that the Union has disclaimed.[8]

Next, Begonja argues that the CBA is not enforceable to the extent it does not provide for "all statutory rights and remedies." Pl. Br. 7. This argument is based on a faulty premise. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi*, 473 U.S. at 628. Consistent with this principle, the CBA provides that "[a]rbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination." CBA Art. XXI § 24(A). Thus, Begonja would be able to pursue, in arbitration, the full panoply of statutory rights. She counters that under the CBA, the Union may undermine her pursuit of her

---

[8] Other decisions in this District that have considered this or materially similar Union–RAB agreements have held that "regardless of the Union's participation, [a plaintiff] must arbitrate [her] Title VII claim." *Bouras v. Good Hope Mgmt. Corp.*, No. 11 Civ. 8708 (WHP), 2012 WL 3055864, at *4 (S.D.N.Y. July 24, 2012). *Compare Germosen v. ABM Indus. Corp.*, No. 13 Civ. 1978 (ER), 2014 WL 4211347, at *7 (S.D.N.Y. Aug. 26, 2014) (noting that plaintiff could arbitrate on his own without Union support), *with Kravar v. Triangle Servs., Inc.*, No. 06 Civ. 7858 (RJH), 2009 WL 1392595, at *3 (S.D.N.Y. May 19, 2009) (declining to enforce arbitration clause where collective bargaining agreement prevented employee from arbitrating discrimination claims without union representation, absent procedures for direct employee arbitration); *and Morris v. Temco Serv. Indus., Inc.*, No. 09 Civ. 6194 (WHP), 2010 WL 3291810, at *5 (S.D.N.Y. Aug. 12, 2010) (declining to compel arbitration where union had prevented plaintiff from arbitrating discrimination claims).

statutory rights, insofar as it provides that "[a]ll Union claims are brought by the Union alone and no individual shall have the right to compromise or settle any claim without the written permission of the Union." CBA Art. VII § 4. But this provision applies only to "Union claims," *i.e.*, those brought by and supported by the Union. It does not apply to claims brought by individuals alone. And to the extent that Begonja fears that the Union may in some way disrupt or interfere with her pursuit in arbitration of her claim, that argument claim is speculative and premature. Upon completion of the arbitral process, should Begonja conclude that her procedural or substantive rights were infringed, she may seek review in court, as both the FAA and the CBA contemplate. *See* 9 U.S.C. § 10 (grounds for judicial vacatur of arbitration award); *Pyett*, 556 U.S. at 271–72 (observing that unions have a duty of fair representation to their members); CBA Art. VIII § 3.

Also unavailing is Begonja's reliance on a California Supreme Court case, *Armendariz v. Foundation Health Psychcare Services, Inc.*, which held certain procedural provisions necessary for statutory rights to be effectively vindicated. *See* 24 Cal. 4th 83, 91 (CA 2000) (requiring neutral arbitrator, sufficient discovery, a written award, and reasonable employee costs). That court's application of the FAA is not binding on this Court. And *Armendariz* is inconsistent with the Supreme Court's 2013 decision in *Italian Colors*, to the extent that the California Supreme

Court found arbitration provisions unenforceable merely because the arbitral forum and procedures made it uneconomical to pursue claims in arbitration.[9]

In any event, the CBA does not, on its face, prevent the *Armendariz* requirements from being met. It provides for an arbitrator selected by the Union and RAB,[10] *see* CBA Art. VIII § 8; for a written award, *id.* § 2; and for full statutory relief for discrimination claims, *see id.* Art. XXI § 24(A). Further, the CBA neither directly imposes arbitration costs on the employee nor places any limits on discovery, which is separately governed by the provisions of section 7 of the FAA, 9 U.S.C. § 7. After arbitration, Begonja would, of course, be entitled to seek redress in court on the basis of any deficiency in the proceedings in violation of the FAA or other governing law. *See* CBA Art. VIII § 3. Simply put, Begonja has not shown that the CBA's arbitral procedures would preclude her from pursuing her statutory rights.

Finally, Begonja argues that the CBA "grievance process deprives [her] of her basic due process rights" because the CBA allows for an arbitration hearing to proceed if the Union were to appear without the grievant. Pl. Br. at 9. The Court construes Begonja to argue that this provision waives her substantive statutory rights, as no due process claim can be made absent state action. *See Mussafi v. Fishman*, No. 12 Civ. 2071 (JGK), 2012 WL 5473874, at *7 (S.D.N.Y. Nov. 12, 2012) (in challenge to arbitration proceeding, holding that plaintiff "failed to allege any state action, and due process is a requirement before liberty or property is deprived by state action"). It is premature to resolve that issue. Begonja's conjecture that she might be

---

[9] The decision in *Gambardella v. Pentec, Inc.*, No. 01 Civ. 1827 (JBA), 2003 WL 22119182 (D. Conn. Aug. 25, 2003), which favorably cited *Armendariz* and on which Begonja also relies, is similarly inapposite.

[10] In the event an employee brings a claim without Union support, the CBA provides that the means of selecting an arbitrator and the extent to which the parties shall bear the arbitrator's costs will be decided between the employee and employer. *See* CBA Art. XXI § 24(B)(3)(b).

physically absent from her arbitration, and that the Union might appear in her stead against her will, is entirely conjectural.

Because nothing in the CBA prevents Begonja from pursuing her claims in the arbitral forum, the arbitration provisions are not invalid as a substantive waiver of statutory rights.

### 2. Unconscionability

Begonja further argues that the arbitration provisions are unconscionable, and therefore unenforceable.

It is a "fundamental principle that arbitration is a matter of contract," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)) (internal quotation marks omitted), and "strictly a matter of consent," *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)) (internal quotation marks omitted). Therefore, the presumption of arbitrability does not bear on the threshold issue of whether the parties entered into a binding agreement to arbitrate at all. *See Applied Energetics, Inc. v. New Oak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) ("[T]he presumption does not apply to disputes concerning whether an agreement to arbitrate has been made."); *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 72 (2d Cir. 1997). Instead, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under New York law[11]:

---

[11] Neither the CBA itself nor parties clarify which state's law applies, but the Court assumes New York law applies. There is no reason to assume that the choice of another state's law would affect the Court's resolution of this claim.

15

> a contract is unconscionable when it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms. Generally, there must be a showing that such a contract is both procedurally and substantially unconscionable. The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se.

*Ragone*, 595 F.3d at 121–22 (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)) (citations, alterations, and internal quotation marks omitted).

As to substantive unconscionability, Begonja first argues that the CBA is unconscionable because it does not afford her the opportunity to fully pursue her statutory rights and remedies. Because the Court has already found that the CBA does *not* deny Begonja any statutory rights or remedies, this argument necessarily fails. Next, Begonja argues in general terms that the CBA arbitration provisions "unreasonably favor the employer" because they "prevent employees from seeking judicial intervention." *Id.* at 11. But this objection merely restates the very *definition* of a mandatory arbitration provision. Nor has Begonja identified any aspect of the arbitration scheme here that is out of step with those regularly upheld in this District. Therefore, Begonja has failed to demonstrate any substantive unconscionability.

As to procedural unconscionability, Begonja argues that she did not specifically agree to the terms requiring her to arbitrate her discrimination claims; that she was not advised as to such terms; and that she had no ability to turn down such terms. But it is undisputed that the Union properly negotiated this collective agreement on behalf of the covered employees, and thereby bound them, under the National Labor Relations Act ("NLRA"). Under the NLRA, the Union was Begonja's "exclusive representative[] . . . for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C.

16

§ 159(a). The CBA's arbitration provisions qualify as "conditions of employment" subject to lawful Union bargaining. *See Pyett*, 556 U.S. at 257 ("As in any contractual negotiation, a union may agree to the inclusion of an arbitration provision in a collective-bargaining agreement in return for other concessions from the employer."). The Court therefore finds no procedural unconscionability.

For these reasons, the arbitration provisions of the CBA are valid and enforceable.

### B. Time-Barred Claims at Arbitration

Begonja next urges the Court to deny the motion to dismiss on the ground that, were she to initiate an arbitral action now, her discrimination claims would be time-barred. The Court is skeptical that a litigant may obtain an otherwise contractually-unavailable federal-court forum by bootstrapping from her failure to meet a deadline to pursue her claims in a contractually agreed-upon forum. But, in any event, the question is moot: On October 9, 2015, defendants agreed in a pretrial conference before this Court to waive any possible limitations-based defense at arbitration. And the CBA permits this. It allows an employer to agree to extend the default limitations periods, and an arbitrator to extend such periods for good cause. CBA Art. VII § 7. If Begonja promptly initiates arbitration, therefore, her claim there will be timely.

### C. Staying this Case Pending Arbitration

As to whether to dismiss this action in light of the binding arbitration agreement, or to stay these proceedings pending arbitration, the Second Circuit recently resolved that question. It held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir.), *cert. denied*, 136 S. Ct. 596 (2015). Such a stay has been requested here; and a stay will expedite this case by enabling prompt arbitral resolution

of Begonjia's claim and deferring any appellate review until after the arbitration has concluded. Accordingly, the Court stays this case pending arbitration.

### D. Fees and Costs

Defendants also seek attorneys' fees and costs under Federal Rule of Civil Procedure 11 on the grounds that defense counsel notified Begonja's counsel that *Pyett* purportedly controlled and that Begonja's claim of an arbitral time bar was incorrect given defendants' offer to waive any such defense. *See* Def. Br. 4; Goldberg Reply Aff. ¶¶ 3–4.

Rule 11 allows a party to move to sanction an attorney for "presenting to the court a pleading, written motion, or other paper" where "the claims, defenses, and other legal contentions are [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," among other reasons. Fed. R. Civ. P. 11(b). Such motions "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." *Id.* 11(c)(2).

Here, defendants' request for attorneys' fees under Rule 11 was made together with the motion to dismiss rather than as a separate motion, and for that reason alone it must be denied. *See, e.g.*, *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 89–90 (2d Cir. 1998) (reversing Rule 11 sanctions where plaintiff failed to file a separate motion); *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, No. 06 Civ. 1202 (HBP), 2014 WL 6491281, at *8 (S.D.N.Y. Nov. 20, 2014). Moreover, to the extent defendants based their request for sanctions on the theory that Begonja's counsel was notified that "*Pyett* govern[s]" this case, Def. Br. 4, the Court reiterates that *Pyett* did not foreclose Begonja's arguments, even though the Court has found those arguments meritless.

## CONCLUSION

18

For the foregoing reasons, Begonja's claims are referred to arbitration, the present action is stayed pending the outcome of arbitration, and defendants' request for fees and costs is denied. The Clerk of Court is directed to close the motion pending at docket number 20, and to place this case on the suspense docket.

The parties are directed to submit a joint status letter to the Court every 90 days, measured from the date of this decision, advising it as to the status of the arbitration proceedings.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: January 29, 2016
       New York, New York